JS-6

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**SOUTHERN DIVISION**

| | |
|---|---|
| **CASTELLET, INC.,** | **Case No.: 8:18-cv-00582-DOC-KES** |
| Plaintiff, | |
| vs. | **ORDER GRANTING DEFENDANT'S** |
| | **MOTION FOR SUMMARY** |
| **GOLDEN EAGLE INSURANCE COMPANY ET AL.,** | **JUDGMENT [20]** |
| Defendants. | |

Before the Court is Defendant Peerless Insurance Company's ("Defendant" or "Peerless") Motion for Summary Judgment ("Motion") (Dkt. 20). The Court heard oral arguments on January 7, 2019.

## I.    Background

This is a dispute over whether under the terms of Defendant's insurance policies, Defendant correctly denied general commercial liability coverage to Plaintiff Castellet, Inc. ("Plaintiff" or "Castellet"). Defendant asks this Court to grant summary judgment, arguing that as a matter of law the insurance policies' exclusion provision eliminated any possible coverage for the property damage sought against Plaintiff in the underlying state-court lawsuit. Plaintiff requests the issuance of an order *sua sponte* holding that Castellet had a duty to defend under the insurance policies.

### A.    Facts[1]

#### 1.    The Policies

Defendant insured Plaintiff under consecutive policies, the first of which took effect on June 23, 2006, continuing through July 29, 2010. Statement of Uncontroverted Facts ("SUF") (Dkt. 20-1) ¶ 1. Each of the insurance policies includes both a Commercial General Liability Coverage Form and a form titled "Exclusion – Products-Completed Operations Hazard" (the "PCOH Exclusion"). *Id*. ¶ 4. The insuring agreement in the Commercial General Liability Coverage Form in each of the Peerless insurance policies provides in pertinent part: "We will pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies." *Id*. ¶ 5.

The PCOH Exclusion in each of the Peerless policies includes an exclusionary endorsement that provides, "This insurance does not apply to 'bodily injury' or 'property damage' included within the 'products-completed operations hazard [or PCOH].'" *Id*. ¶ 6. Each of the Peerless policies defines "PCOH" as follows:

---

[1] Unless indicated otherwise, to the extent any of these facts are disputed, the Court concludes they are not material to the disposition of the Motion. Further, to the extent the Court relies on evidence to which the parties have objected, the Court has considered and overruled those objections. As to any remaining objections, the Court finds it unnecessary to rule on them because the Court does not rely on the disputed evidence.

"Products-completed operations hazard":

a. Includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:

(1) Products that are still in your physical possession; or

(2) Work that has not yet been completed or abandoned. However "your work" will be deemed completed at the earliest of the following times:

(a) When all of the work called for in your contract has been completed.

(b) When all of the work to be done at the job site has been completed if your contract calls for work at more than one job site.

(c) When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed . . . .

*Id*. ¶ 7. Each of the insurance policies at issue further defines "Your Product" as:

"Your Product" means:

a. Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

(1) You;

(2) Others trading under your name; or

(3) A person or organization whose business or assets you have acquired; and

b. Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

"Your product" includes:

a. Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of 'your product'; and

b. The providing of or failure to provide warnings or instructions . . . .

*Id*. ¶ 8.

## 2. The Underlying Prince Lawsuit

Castellet does business as Thompson Building Materials. *See* Declaration of Gilbert Torres ("Torres Decl.") (Dkt. 21-3) ¶ 1. Castellet sells building material products such as stone to the public. *Id*. ¶ 3. The masonry subcontractor John Simich ("Simich") has been a customer

of Castellet and purchased stone from Castellet for a project that became the subject of the underlying legal dispute. *Id*. ¶ 4; DUF ¶ 10.

On April 22, 2009, Castellet was sued by Jeffrey and Sherri Prince (the "Princes"), individually and as trustees of the family trust, in California Superior Court, County of Los Angeles, Case No. YC-059602 (the "Prince Action"). DUF ¶ 9. The complaint in the Prince Action (the "Prince Complaint") names Castellet as a defendant for allegedly providing building materials for construction at the Prince's property in Redondo Beach, California, including the "Colonia Cream Patio Flag" stone paving material that was installed at the exterior locations of the home. *Id*. The stone was a natural quarried material, which was delivered to Castellet directly from a stone quarry in multi-ton packages wrapped in chicken wire and mounted on a wood pallet. Statement of Genuine Disputes ("SGD") (Dkt. 21-1) ¶ 17. Castellet sold the stone "as is" specifically disclaiming in writing any implied or express warranties. *Id*. ¶ 19.

The Princes hired Simich Construction, Inc. to perform shoring, concrete foundation, and masonry work. *Id*. at ¶ 10. This masonry work included the laying of flagstone in the patio and pool area, which Simich had purchased from Castellet. *Id*. The Princes alleged that after the installation of the stone patio paving material, the stone paving material at the pool deck decomposed, cracked, and deteriorated due to latent defects. The lawsuit against Castellet included two causes of action from the outset. *See* Declaration of Michael Dawe ("Dawe Decl.") (Dkt. 21-2) at ¶ 23; Prince Action Compl. (Dkt. 1-1). The first cause of action was for negligence. *Id*. The second cause of action was for breach of implied warranties of merchantability and fitness for a particular purpose. *Id*. The Princes alleged that "[t]he Defendants breached their duty of care in that the construction work at the Project was negligently and improperly performed. Said-defects and deficiencies include, but are not limited to decomposition, deterioration, and cracking of the stone paving material at the pool deck[.]" *Id*. ¶ 26; *see also* SGD ¶ 58.

At trial, it was the contention of the Princes that, even if the stone paving material had performed consistent with its natural qualities, Castellet bore legal liability because it had failed

to conduct a prior investigation and determination of the suitability of the stone before selling the paving material. Dawe Decl. ¶ 28. According to Plaintiff, had the architectural and, or, design professionals advising the Princes undertaken due diligence with respect to determining the suitability of the stone for the pool-side installation, they could have determined that a different grade of stone would have been more suitable and less likely to flake. SGD ¶ 27. Plaintiff's expert witness argued that after installation, the stone actually performed as would be expected of a natural quartz-based sandstone of its ASTM-rated grade. *Id*. ¶ 28; Opp'n at 7.

On May 17, 2016, the Superior Court issued the final revised Statement of Decision ruling in favor of Castellet and holding that the Princes failed to meet their burden of proof as to Castellet's duty and that implied warranty of merchantability had been properly excluded from the case. Dawe Decl., Ex. 4 at 6–8. Castellet tendered its defense in the Prince Action to Defendant Peerless through its counsel in October of 2009. SUF ¶ 11. Peerless denied any duty to defend Castellet in the Underlying Action based upon the PCOH Exclusion. *Id*. ¶ 12.

### B.    Procedural History

On April 6, 2018, Plaintiff Castellet filed the Complaint (Dkt. 1). In the Complaint, Plaintiff brings four causes of action: (1) declaratory relief; (2) breach of written insurance contract; (3) tortious breach of contract; and (4) injunctive relief under California Business and Professions Code § 17200. Compl. ¶¶ 64–98. On May 18, 2018, Defendants Golden Eagle Insurance Company ("Golden Eagle"), Liberty Mutual Insurance Company ("Liberty Mutual"), and Peerless answered ("Answer") (Dkt. 14). On June 13, 2018, this Court entered an order granting the stipulation to dismiss Golden Eagle and Liberty Mutual without prejudice and to dismiss Plaintiff's claim for injunctive relief under California Business and Professions Code § 17200 (Dkt. 19).

On June 27, 2018, Peerless filed the present Motion. On July 16, 2018, Castellet opposed ("Opp'n") (Dkt. 21). In the Opposition, Plaintiff requests the issuance of an order *sua sponte* holding that Castellet had a duty to defend. Opp'n at 4. On July 23, 2018, Peerless replied ("Reply") (Dkt. 22).  On September 10, 2018, the Court held a scheduling conference and continued the hearing on the Motion to the motion cut-off date.

## II.    Legal Standard

### A.    Summary Judgment

Summary judgment is proper if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The Court must view the facts and draw inferences in the manner most favorable to the non-moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962); *Chevron Corp. v. Pennzoil Co.*, 974 F.2d 1156, 1161 (9th Cir. 1992). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact for trial, but it need not disprove the other party's case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–25 (1986).

When the non-moving party bears the burden of proving the claim or defense at trial, the moving party can meet its burden for summary judgment by pointing out that the non-moving party has failed to present any genuine issue of material fact. *Musick v. Burke*, 913 F.2d 1390, 1394 (9th Cir. 1990). A party cannot create a genuine issue of material fact simply by making assertions in its legal papers. There must be specific, admissible evidence identifying the basis for the dispute. *S.A. Empresa de Viacao Aerea Rio Grandense v. Walter Kidde & Co., Inc.*, 690 F.2d 1235, 1238 (9th Cir. 1980).

### B.    Duty to Defend

"Although insurers and insureds routinely speak of the insurer's duty to 'indemnify and defend' as if the duties were coextensive, it is well settled that the duty to defend is broader than the duty to indemnify." *Cal. Ins. Guar. Ass'n v. Wood*, 217 Cal. App. 3d 944, 947 (1990) (citing *Gray v. Zurich Insurance Co.*, 65 Cal. 2d 263, 274 (1966)). "[T]he insurer need not defend if the third party complaint can by no conceivable theory raise a single issue which could bring it within the policy coverage." *Id.* at 300; *see also La Jolla Beach & Tennis Club, Inc. v. Industrial Indemnity Co.*, 9 Cal. 4th 27, 39 (1994); *Uhrich v. State Farm Fire & Cas. Co.*, 109 Cal. App. 4th 598, 608 (2003) ("[T]he obligation to defend is not without limits . . . . [T]he duty to defend derives from the insurer's coverage obligations assumed under the insurance

contract. Thus, where there is no potential for coverage, there is no duty to defend.”)). “Where there is no potential for the third party to recover on a covered claim, there is no duty to defend.” *Devin v. United Services Auto. Assn.*, 6 Cal. App. 4th 1149, 1157 (1992) (citations omitted). Where there is a possibility of coverage, however, the insurer must defend. To prevail, therefore, “the insured need only show that the underlying claim may fall within policy coverage; the insurer must prove it cannot.” *Montrose Chemical Corp. v. Superior Court*, 6 Cal. 4th 287, 300 (1993).

Typically, an insurer’s duty to defend is judged “in the first instance by comparing the allegations of the complaint with the terms of the policy.” *Id.* at 295. “Since pleadings are easily amended, the proper focus is on the facts alleged, rather than the theories for recovery. . . . The ultimate question is whether the facts alleged ‘fairly apprise’ the insurer that the suit is upon a covered claim.” *Michaelian v. State Comp. Ins. Fund*, 50 Cal.App.4th 1093, 1106 (1996). *See also Swain v. California Casualty Insurance Co.*, 99 Cal. App. 4th 1, 8 (2002) (“[C]overage turns not on ‘the technical legal cause of action pleaded by the third party’ but on the ‘*facts* alleged in the underlying complaint[.]’”

“Facts extrinsic to the complaint [can] also give rise to a duty to defend when they reveal a possibility that the claim may be covered by the policy.” *Montrose Chemical Corp.*, 6 Cal. 4th 287, 295 (1993). *See also State Farm Fire & Casualty Co. v. Century Indemnity Co.*, 59 Cal. App. 4th 648, 657 (1997); *Saylin v. Cal. Ins. Guar. Ass'n*, 179 Cal. App. 3d 256, 263 (1986) (“For an insurer, the existence of a duty to defend turns not upon the ultimate adjudication of coverage under its policy of insurance, but upon those facts known by the insurer at the inception of a third party lawsuit”). California courts consider all facts known to the insurer at the time the insured tenders a claim in determining the scope of the insurer’s defense obligation. *Montrose Chemical Corp.*, 6 Cal. 4th at 287 (stating that the court must examine “the policy, the complaint, and all facts known to the insurer from any source”); *CNA Casualty of Cal. v. Seaboard Surety Co.*, 176 Cal. App. 3d 598, 605 (1986) (“An insurer's duty to defend must be analyzed and determined on the basis of any potential liability arising from facts

available to the insurer from the complaint or other sources available to it at the time of the

tender of defense").

Facts outside the complaint are considered because of the possibility that the pleadings

could be amended to state a covered claim. *See Scottsdale Ins. Co. v. MV Transportation*, 36

Cal. 4th 643, 654 (2005) ("[T]the duty also exists where extrinsic facts known to the insurer

suggest that the claim may be covered"); *Montrose Chemical Corp.*, 6 Cal. 4th at 296 ("[F]acts

known to the insurer and extrinsic to the third party complaint can generate a duty to defend,

even though the face of the complaint does not reflect a potential for liability under the

policy. This is so because current pleading rules liberally allow amendment; the third party

plaintiff cannot be the arbiter of coverage" (citations omitted)); *State Farm Fire & Casualty Co.*,

59 Cal. App. 4th at 657 ("In determining whether an insurer has a duty to defend, a court first

compares the allegations in the complaint with terms of the policy. Next, it looks to facts that

may not have been alleged but were known to the insurer when the action was filed").

"The defense duty is a continuing one, arising on tender of defense and lasting until the

underlying lawsuit is concluded, or until it has been shown that there is no potential for

coverage." *Montrose Chemical Corp.*, 6 Cal.4th at 295. Thus, extrinsic evidence the insurer

learns after denying a defense can give rise to a duty to defend. See *id.* at 296, 300 ("The duty to

defend is determined by reference to the policy, the complaint, and *all* facts known to the insurer

from any source"); see also *Systems XIX, Inc. v. United Capitol Ins. Co.*, No. C 98-0481 MJJ,

1999 WL 447599, *5 (N.D. Cal. June 23, 1999) (the duty to defend inquiry "focuses on what the

insurer knew or should have known at the time of declining coverage").

"[T]he insured is entitled to a defense if the underlying complaint alleges the insured's

liability for damages potentially covered under the policy, or if the complaint might be amended

to give rise to a liability that would be covered under the policy." *Montrose Chemical Corp.*, 6

Cal. 4th at 299 (citing *Gray*, 65 Cal.2d at 275–76); see also *Pepperell v. Scottsdale Ins. Co.*, 62

Cal. App. 4th 1045, 1054 (1998). "Any doubt as to whether the facts give rise to a duty to

defend is resolved in the insured's favor." *Horace Mann Ins. Co. v. Barbara B*, 4 Cal. 4th 1076,

1081 (1993); *see also Modern Dev. Co. v. Navigators Ins. Co.*, 111 Cal. App.4th 932, 942

(2003). The insured "may not speculate about unpled third party claims to manufacture coverage," however. *Coit Drapery Cleaners, Inc. v. Sequoia Ins. Co.*, 14 Cal. App. 4th 1595, 1605 (1993). Thus, an insurer has no duty to defend where the potential for liability is "'tenuous and farfetched.'" *Id.*

"Where a duty to defend exists as to one claim in an action, the insurer is obligated to defend against all claims in that action 'prophylactically' to ensure that an 'immediate' defense is provided." *Rizzo v. Ins. Co. of State of Pa.*, 969 F. Supp. 2d 1180, 1190 (C.D. Cal. 2013) (citing *Buss v. Superior Court*, 16 Cal. 4th 35, 48 (1997)).

## III.    Discussion

Defendant moves for summary judgment on the basis that as a matter of law, there was never any possibility of any covered damages in the Prince Action that could trigger a duty to defend on the part of Peerless because the damages alleged in the Prince Action fell within the scope of the PCOH Exclusion. *See* Mot. at 22. Castellet opposes summary judgment and argues that the PCOH Exclusion at least did not apply to the Princes' negligence cause of action because it was premised on alleged negligent provision of service that is not barred by the products exclusion. *See* Opp'n at 3. According to Plaintiff, since it was always possible from the inception of the Princes' lawsuit that the stone might not be defective, and that Castellet's alleged liability might arise from a failure to meet the alleged standard of care of inspecting the stone and assuring its suitability for the purchasers' intended purpose before selling the product, there was always the possibility that Castellet could have been found liable in negligence irrespective of a non-defective product. *Id.* 7–8.

### A.    Interpretation of Insurance Policies

Ordinary rules of contract interpretation apply to insurance contracts. *Bank of the West v. Superior Court*, 2 Cal. 4th 1254, 1264 (1992). "The fundamental goal of contractual interpretation is to give effect to the mutual intention of the parties." CAL. CIV. CODE § 1636. Such intent is to be inferred, if possible, solely from the "written provisions of the contract." *AIU Ins. Co. v. Superior Court*, 51 Cal. 3d 807, 822 (1990). If the contractual language is clear and explicit, it governs. CAL. CIV. CODE § 1638. *See Baker v. Nat'l Interstate Ins. Co.*, 180 Cal.

App. 4th 1319, 1327 (2009) ("If the language of the policy is not ambiguous, then the coverage inquiry ends, and the court determines coverage by applying the plain meaning of the unambiguous provisions of the policy"); *S. Cal. Edison Co. v. Superior Court*, 37 Cal. App. 4th 839, 848 (1995) ("When a dispute arises over the meaning of contract language, the first question to be decided is whether the language is 'reasonably susceptible' to the interpretation urged by the party. If it is not, the case is over").

A policy's language is ambiguous when it is susceptible of two or more reasonable interpretations. *La Jolla Beach & Tennis Club, Inc. v. Industrial Indemnity Co.*, 9 Cal. 4th 27, 37 (1994). Ambiguities may concern the fact or extent of coverage, *Continental Casualty Co. v. Phoenix Construction*, 46 Cal.2d 423, 437–38 (1956), and may arise from contradictory or necessarily inconsistent language in different portions of the policy, *Delgado v. Heritage Life Ins. Co.*, 157 Cal. App. 3d 262, 271 (1984). A court may not adopt a strained or absurd interpretation of the policy language in order to find ambiguity where none would otherwise exist. *La Jolla Beach &Tennis Club*, 9 Cal. 4th at 37.

When a court concludes that policy language is ambiguous, it examines whether a finding of coverage under the policy is consistent with the objectively reasonable expectations of the insured. *Baker*, 180 Cal. App. 4th at 1328; *see also Bank of the West*, 2 Cal.4th at 1264–65 ("If the terms of a promise are in any respect ambiguous or uncertain, it must be interpreted in the sense in which the promisor believed, at the time of making it, that the promisee understood it," quoting CAL. CIV. CODE § 1649). In determining whether coverage is consistent with the insured's objectively reasonable expectations, the disputed policy language must be examined in the context of its intended function in the policy. *Baker*, 180 Cal. App. 4th at 1328; *Nissel v. Certain Underwriters at Lloyd's of London*, 62 Cal. App. 4th 1103, 1111–12 (1998) ("[T]he disputed policy language must be examined in context with regard to its intended function in the policy. This requires a consideration of the policy as a whole, the circumstances of the case in which the claim arises and 'common sense,' " citing *Bank of the West*, 2 Cal. 4th at 1265, 1276).

Where ambiguity remains after application of the reasonable expectations test, the court construes the ambiguous policy language against the insurer, and in favor of coverage. *Baker*,

180 Cal. App. 4th at 1328. Nonetheless, a court cannot rewrite a policy and bind an insurer to

cover a risk that it did not contemplate covering, and for which it was not paid. *Id.*

### B.    Whether the PCOH Exclusion Eliminated All Possible Coverage

As set forth more fully *supra*, the provision at issue in this dispute is the PCOH

Exclusion, which provides in part that "property damage" occurring "away from premises

[Castellet] own[s] or rent[s] and arising out of 'your product'" is excluded from the insurance

policy's coverage. DUF ¶ 7. The term "Your Product" is further defined and expressly includes

"[w]arranties or representations made at any time with respect to fitness, quality, durability,

performance or use of 'your product'; and [t]he providing of or failure to provide warnings or

instructions." *Id.* ¶ 8. There is no dispute that the property damage at issue in the Prince Action

was "away from" the premises that Castellet owns or rents. *See* Reply at 7. The key issue is

whether the property damage was "arising out '[Castellet's] product.'" *See, e.g.,* Opp'n at 3.

Defendant insurer argues that as a matter of law the PCOH Exclusion eliminated any

possible coverage for the property damage sought against Castellet because the phrase "arising

out of your product" is unambiguous. Mot. at 20. According to Defendant, if Castellet's

products caused no "property damage," Castellet can have no liability, because all it did was

supply products for construction performed by others at the Princes' home. *Id.* at 22. As a result,

the only potential liability for "property damage" Castellet could have was if "property damage"

somehow arose out of its products. *Id.* Defendant argues that the only alleged property damage

was based on stone patio paving material Castellet supplied and later allegedly "decomposed,

cracked, and deteriorated[.]" Reply at 7 (citing Prince Complaint.). Thus, any "property

damage" attributable to it was dependent on the allegation that the "stone patio paving material

that was defective and inappropriate for use as a paving material." *Id.*  And Defendant argues

that any allegations related to the negligent inspection or failure to provide warnings was also

excluded from coverage, as the policy definition of "your product" includes "the providing of or

failure to provide warnings or instructions." *Id.* at 8. According to Defendant, Castellet's only

potential liability was dependent on it being found that the Princes' "property damage" was

proximately caused by "your product," which included not only defects in the products, but also

warranties, warnings, and instructions supplied with the products it sold. *Id.* at 13. "The fact that other parties may have been negligent and caused the alleged damage does not somehow create coverage for Castellet, because it does not change the conclusion that its only potential liability for negligence was based on its product ("your product")." *Id.*

Plaintiff argues that the phrase "arising out of" is ambiguous and must be interpreted narrowly when employed in exclusions. Opp'n at 1–2. According to Plaintiff, while it is "at least arguable" that one of the two causes of action asserted against Plaintiff in the Prince Action falls under the PCOH Exclusion because it is expressly premised on a defective product, the PCOH Exclusion does not apply to all "alternative or concurrent causes or activities." *Id.* at 3. In other words, because the negligence cause of action was premised upon alleged breaches of tort duty, such as the duty to inspect the stone paving material and to assure its suitability for the purposes of the purchaser before selling the material, the negligence-based claim was not excluded under the PCOH Exclusion because it cannot be said to "have solely 'arisen out of' Castellet's product." *Id.* Plaintiff also argues that apart from the negligence cause of action, there were several alternative potential causes of the alleged damages other than Castellet's product, such as the instillation of the material by the masonry subcontractor, which at least created a question as to whether the damages "arose out of" the stone product. *Id.* at 3–4.

First, the Court notes that the language in the PCOH Exclusion has already been addressed by multiple California courts. The court in *Baker v. Nat'l Interstate Ins. Co.*, 180 Cal. App. 4th 1319, 1320 (2009), interpreted and applied the same PCOH exclusion that is in issue here. The Court held that the exclusion for claims arising within the meaning of the PCOH exclusion "is equally unambiguous" and applied to the underlying wrongful death lawsuit at issue in that case." *Id.* at 1336. "Unlike the 'products hazard' exclusion which was at issue in [*Insurance Co. of North America v. Electronic Purification Co.*, 67 Cal. 2d 679 (1967)], which we agree was unclear, the exclusion in the policy [at issue], excluding coverage for claims arising within the definition of the 'products—completed operations' hazard is unambiguous and easily understandable by a layperson policy reader." *Id.* The court went on to note the PCOH exclusion at issue expressly included property damage "arising out of 'your product'"

and held that this "unambiguously advised" the insured that a claim alleging bodily injury

arising from its product or its work was excluded from coverage and concluded that the court

could "simply see no other reasonable reading that can be given to the policy language." *Id*.

Other courts have described similar PCOH exclusions and noted their prevalence is tied

in part to the "hefty premium" charged for coverage of bodily harm and property damage

occurring away from the insured's premises and arising out of the insured's work or products.

*See Energy Ins. Mut. Ltd. v. Ace Am. Ins. Co.*, 14 Cal. App. 5th 281, 294 n.6 (2017) ("Because a

hefty premium is charged for this coverage, some CGL policies contain endorsements that

exclude this hazard.").

The Ninth Circuit has also held—in an unreported case—a similar PCOH exclusion to be

unambiguous and to operate to completely preclude coverage. *Nautilus Ins. Co. v. Worldwide

Aeros Corp*., 171 F. App'x 182, 184 (9th Cir. 2006) ("The loss is excluded as part of the

Products / Completed Operations Hazard."). That exclusion applied to losses that occurred (1)

away from premises that Worldwide owned or leased, (2) after the customer had taken physical

possession of the product, and (3) after Worldwide's work had been completed. *Id*. The court

held that the PCOH exclusion "is not . . . rendered inoperable because it inconspicuously takes

away coverage that an insured could reasonably expect." *Id*. at 185.  "An insured in the place of

Worldwide could not have reasonably expected that the insurance extended to injuries to the

ground crew during training flights undertaken by the buyer of an airship." *Id*.

The Ninth Circuit has also clarified the breadth of an "arising out of" exclusion in an

insurance policy. Plaintiff correctly notes that courts are to interpret coverage clauses in

insurance contracts "broadly so as to afford the greatest possible protection to the insured" and

exclusionary clauses "narrowly against the insurer." Opp'n at 2–3 (referring to this legal

principle as the "*Partridge* Rule"). However, in *Los Angeles Lakers, Inc. v. Fed. Ins. Co.*, the

Ninth Circuit acknowledged the breadth of the exclusionary clause at issue given the inclusion

of the clause "arising from." 869 F.3d 795, 801 (9th Cir. 2017). "California courts and our court

have consistently given a broad interpretation to the clause "arising from" in an insurance

contract." *Id*. (citations omitted). "'[A]rising out of' encompasses 'originating from, having its

origin in, growing out of, . . . flowing from, . . . incident to, or having connection with.'" *Id.* Thus, the Ninth Circuit held "this clause broadly excludes from coverage claims with 'a minimal causal connection or incidental relationship' to invasion of privacy." *Id.*; *see also State Farm Fire & Cas. Co. v. Salas*, 222 Cal. App. 3d 268, 271 n.4 (1990) (holding that "arising out of" is also broadly construed in exclusionary clauses).

With this precedent in mind, the Court turns to the PCOH Exclusion at hand and the facts presented in this case. There can be no dispute that the Princes alleged in their Complaint that "after the installation of the stone patio paving material" the stone "decomposed, cracked, and deteriorated due to latent defects[.]" Prince Compl. ¶ 9. The Princes alleged that the defects and deficiencies of their home project arose out of, are attributable to, and were directly and proximately caused by the latent defects. *Id.* ¶ 19. The PCOH Exclusion unambiguously excluded coverage for such damages. Plaintiff's attempt to frame the lawsuit in a fashion that triggers a duty to defend fails. Peerless's policy defined the term "Your Product" to include in the exclusion "[w]arranties or representations made at any time with respect to fitness, quality, durability, performance or use of 'your product'; and [t]he providing of or failure to provide warnings or instructions." DUF ¶ 8. Thus Castellet's alleged failure to inspect the stone or warn the subcontractor of the inadequacy of the material as applied to the stone paving material was sufficiently connected to its own product to fall within the scope of the PCOH exclusion. *See, e.g., Sentry Ins. v. Am. Nat. Fire Ins. Co.*, 314 F. App'x 916, 919 (9th Cir. 2008) ("Sentry's policy excluded coverage for damages 'arising out of' MFM's product, including failure to warn, and MFM's failure to warn of the fire risk attendant to a known modification to its spinning machine was sufficiently connected to its own product to fall within the scope of the PCOH exclusion.'").

Plaintiff lists several alternative causes of damages other than product defect or failure to inspect or warn that Plaintiff argues created a "genuine issue of material fact" as to whether the damages arose out of the product and thus fell within the PCOH Exclusion. SGD ¶ 35. This includes a failure of professionals advising the Princes to designate a suitable grade of stone and negligence on the part of the subcontractors in the selection, preparation, and installation of the

stone, and the post-installation application of sealer by a third-party contractor that may have worsened the flaking of the stone. *Id*. But while these alternative causes of action supported Castellet's case theory that Castellet was not in fact liable for negligence, which ultimately prevailed in the Prince Action, they do not trigger a duty to defend under the insurance policy. Castellet was sued by the Princes because the stone they sold allegedly caused property damage. There is simply no other reason why Castellet was involved in the Prince Action. And Castellet chose to purchase standard premises/operations CGL insurance that expressly excluded its PCOH exposure. Castellet had no reasonable expectation to be covered in the lawsuit.

The decision in *Hays v. Pacific Indem. Group*, 8 Cal. App. 3d 158 (1970) does not alter the analysis. In that case the court did not address the PCOH Exclusion but rather took issue with policy language related to operations which have not been completed or abandoned. *Id*. at 162. The court found ambiguity in language related to the completion or abandonment of an operation including that an operation "shall not be deemed incomplete because improperly or defectively performed or because further operations may be required pursuant to an agreement[.]" *Id*. "How can an installation be deemed completed when it is incomplete?" *Id*. Here, there is no such language in the PCOH Exclusion, and the policy at issue clearly excludes defective products and "property damage" occurring away from premises you own or rent and arising out of "your product." DUF ¶ 7. The fact that the stone supplied was allegedly not defective and that damages were actually caused by defective installation or a failure to warn does not remove the Prince Action from the PCOH Exclusion.

Nor does the decision in *State Farm v. Partridge*, 10 Cal. 3d 94 (1973) change the result. In *Partridge*, the question presented was : "When two negligent acts of an insured—one auto-related and the other non-auto-related—constitute concurrent causes of an accident, is the insured covered under both his homeowner's policy and his automobile liability policy, or is coverage limited to the automobile policy." *Id*. at 96. Here, as discussed, Castellet's liability arose directly out of its sale of "your product," which was alleged to have deteriorated and caused other property damage. There is no alleged independent negligence of the insured to avoid the PCOH Exclusion and thereby trigger coverage. The Court is not persuaded by the

argument that "Castellet's alleged negligence arose out of an alleged independent duty to inspect the stone before selling it, and to assure the quality of the Stone was suitable for the [Prince's] intended needs." Opp'n at 11. As discussed, that is not what is alleged in the Prince Complaint. The Complaint is expressly directed toward latent defects in the stone. Regardless, this theory of negligence also falls under the PCOH Exclusion and property damage arises out of the stone.

### C.    Whether Failure to Investigate Supports Bad Faith

Peerless argues there can be no finding of bad faith as a matter of law because it did not have a contractual duty to defend the Prince Action. Mot. at 23. Plaintiff argues that Peerless's failure to investigate may alone support a finding of bad faith and/or punitive damages. Opp'n at 25.

It is clear that if there is no potential for coverage and, hence, no duty to defend under the terms of the policy, there can be no action for breach of the implied covenant of good faith and fair dealing because the covenant is based on the contractual relationship between the insured and the insurer. *Waller v. Truck Ins. Exch., Inc.*, 11 Cal. 4th 1, 36 (1995), *as modified on denial of reh'g* (Oct. 26, 1995). As discussed, the damages alleged against Castellet in the Prince Complaint fall within the PCOH Exclusion.  The parties do not dispute that Peerless reviewed the Prince Complant. SGD ¶ 14; Dawe Decl. ¶ 5. The duty of the insurer may be fully met by such a review. *Am. Internat. Bank v. Fid. & Deposit Co.*, 49 Cal. App. 4th 1558, 1571 (1996). Peerless did not act in bad faith as a matter of law in denying coverage.

### IV.    Disposition

Accordingly, the Court GRANTS Defendants' Motion for Summary Judgment.

*David O. Carter*
_____
DAVID O. CARTER
UNITED STATES DISTRICT JUDGE

Dated:  January 8, 2019